JERRY WHITTLE, PLAINTIFF-RESPONDENT, v. ASSOCIATED INDEMNITY CORPORATION, DEFENDANT-APPELLANT.

Submitted May 28, 1943—Decided September 16, 1943.

For the appellant, *I. Charles Lifland* (*Peter P. Artaserse,* of counsel).

For the respondent, *Edward F. Broderick* (*Edward M. Malone,* of counsel).

The opinion of the court was delivered by

PERSKIE, J. The questions for decision on the facts of this case are whether the trial judge erred in denying appel-

lant's motions for nonsuit and for a directed verdict, and in granting respondent's motion for a directed verdict.

Respondent suffered injuries as a result of an automobile accident on May 9th, 1941. To recover damages for the injuries which he sustained as a result of that accident, he sued Robert Wallace and Mechanical Process Corporation. That suit was tried on June 16th, 1942. It resulted in a directed verdict in favor of Mechanical Process Corporation and in a verdict of $11,524 in favor of respondent and against Robert Wallace. Execution was issued against Robert Wallace and was returned unsatisfied.

Whereupon, respondent sued appellant on its automobile policy of insurance which it had issued to E. V. D. Wallace (father of Robert Wallace) and Mechanical Process Corporation. By this policy, which is admittedly not controlled by our Financial Responsibility Act (*N. J. S. A.* 39:6–1, *et seq.*), appellant agreed to pay in behalf of the named assured all sums which the assured shall become obliged to pay by reason of the liability imposed upon them by law for bodily and property damage sustained by any person or persons, caused by accident and arising, among other things, out of the use of the automobile.

In addition to the specifically named assured, the policy also included any person as an assured who used that automobile for a purpose stated in the policy provided the actual use thereof was with the permission of a specifically named assured. It is admitted that Robert Wallace was such an additional assured at the time of the accident (May 9th, 1941), that he actually used the automobile for a purpose stated in the policy, and that such use was in pursuance of the express permission of his father.

The insurance was, however, subject to conditions. Among these are:

"*8. Notice of accident.*

"Upon the occurrence of an accident written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respect-

ing the time, place and circumstances of the accident, the name and address of the injured and of available witnesses."

*"2. Assistance and co-operation of the insured,"* &c.

"The insured shall co-operate with the company and * * * upon the company's request in * * * (3) securing and giving evidence, (4) in obtaining the attendance of witnesses, (5) the conducts of suits * * *."

*"10. Action against company,"* &c.

"No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all of the terms of the policy, or * * *."

These conditions are not, as urged, conditions subsequent. They do not fall into the class which is involved in such typical cases as, *Center Garage Co.* v. *Columbia Insurance Co.,* 96 *N. J. L.* 456, 459; 115 *Atl. Rep.* 401; *Kleinman* v. *Globe & Rutgers Fire Insurance Co.,* 111 *N. J. L.* 374, 378, *et seq.;* 168 *Atl. Rep.* 648; *Rockmiss* v. *New Jersey Manufacturers, &c., Insurance Co.,* 112 *N. J. L.* 136; 169 *Atl. Rep.* 663, and *Bosshardt* v. *Commercial Casualty Insurance Co.,* 124 *N. J. L.* 54, 55; 11 *Atl. Rep.* (2d) 49. In the case at bar the stated conditions by the very terms of the policy (Condition 10) are made conditions precedent. *Cf. Restatement of Contracts,* § 250; *Williston on Contracts,* § 666A. Moreover, we have held that they are "conditions in the nature of a promissory warranty," and that they are "conditions precedent to the right of recovery." Had Robert Wallace been obliged to pay the judgment that respondent had recovered against him, and had he sought indemnity from appellant, he would have been obliged to prove that he had fulfilled the stated conditions. Clearly, respondent's rights are "purely derivative." They are no greater and no less than those of Robert Wallace from whom he derived those rights and in whose shoes he stands. Thus any defense that appellant could have set up against Robert Wallace it could have with like efficacy set up against respondent. *Kindervater* v. *Motorists Casualty Insurance Co.,* 120 *N. J. L.* 373, 375; 199 *Atl. Rep.* 608; *Habedank* v. *Atlantic Casualty Insurance Co.,* 128 *N. J. L.* 338; 25 *Atl. Rep.* (2d) 889.

Appellant generally denied liability and it expressly denied

liability by its separate defenses, on the ground, *inter alia,* that Robert Wallace had not fulfilled the stated conditions precedent and respondent, therefore, was not entitled to recover.

Thus the question before the trial judge at the end of the entire case (a stage in the cause here most favorable to respondent, *Cf. Dikowski* v. *Metropolitan Life Insurance Co.,* 128 *N. J. L.* 124; 24 *Atl. Rep.* (2d) 173) was whether, under all the proofs adduced and all proper inferences deducible therefrom, he was obliged to hold, as appellant argues, that respondent had not proved that Robert Wallace had fulfilled the conditions precedent upon which appellant's obligation, under its policy, is dependent, and, therefore, appellant's motion for a directed verdict should have been granted. We are constrained to hold that appellant's argument is sound.

The proofs are free from material dispute. They disclose that after the accident, which occurred in Madison, New Jersey, the automobile is assumed to have been returned by Robert Wallace to the family garage although no one appears to have seen him do so. As a matter of fact, Robert Wallace disappeared thereafter. His whereabouts were unknown to his family until approximately two months after the accident, when his father ascertained that he had enlisted in the Canadian army. The father promptly left for Montreal, Canada, where he located his son on July 11th, 1941. He learned from Robert that he had become "flustered" after the accident and left for or fled to Canada. The father obtained a statement, under oath, from Robert as to the details of the accident and transmitted that statement to appellant who claimed to have received it on July 23d, 1941, although the father claims to have sent it between July 13th and 15th, 1941. Appellant promptly (July 25th, 1941) wrote to Robert Wallace notifying him that its defense and its investigation of the accident were given to him with reservation of its rights under its policy. The receipt of that letter is not questioned. Robert Wallace returned home about September 1st, 1941. He was thereafter (about October 1st, 1941) served with summons and complaint which he delivered to appellant when

its representatives told him that appellant would defend him only upon condition that he sign a non-waiver agreement. He signed such an agreement. Thereafter, Robert Wallace conferred with appellant, appeared, and testified at the trial fully and in accordance with the statement he had furnished appellant as to the accident.

The proofs further disclosed that between the time when Robert Wallace disappeared and the time (July 11th, 1941) when he furnished his statement, his father concededly did fully assist and co-operate with appellant. He notified it on the day following the accident (May 10th, 1941) that his car was in an accident. He conferred with appellant's representatives the very night of May 10th, 1941. As a result of that conference, appellant's representatives learned that the accident happened in Madison, New Jersey. They checked the police blotter of that city with reference thereto, they located the witness who was with respondent at the time of the accident and obtained a written statement from her concerning the accident. But notwithstanding all this, appellant complained in writing to the father under dates of June 17th and July 17th, 1941, about the absence and lack of co-operation it was receiving from Robert Wallace /and as soon as it learned of his whereabouts, as we have seen, it wrote to him in the manner already stated.

Assuming but not deciding that the assistance and co-operation by the father may be said to have been rendered "on behalf" of his son, Robert, that assistance and co-operation, at best, merely fulfilled the sole provision concerning the giving of the notice of the accident and left unfulfilled the other prescribed provisions. Appellant was entitled, under the policy, to have from its assured, as soon as practicable after the accident, all of the prescribed information available to its assured concerning the accident. Such information was not supplied by Robert Wallace until over two or two and one-half months after the accident. In light of modern facilities for communication, such lapse of time can hardly be said to have been soon as practicable. *Cf. Weller* v. *Atlantic Casualty Insurance Co.*, 128 *N. J. L.* 414; *26 Atl. Rep.* (*2d*) 503.

And if the test were that it must be shown that the failure to fulfill the conditions precedent prejudiced the insurer, the trial judge might well have been justified, under the proofs, in submitting the case to the jury. But that is not the test. The test is: Was a condition precedent of the policy unfulfilled by the assured? If it was then, if the insurer so chooses and it did so choose, the policy is at an end (*Cf. Kindervater* v. *Motorists Casualty Insurance Co., supra* (at *pp.* 376, *et seq.*) ), for "there has been a failure to fulfill a condition upon which [insurer's] obligation is dependent." *Coleman* v. *New Amsterdam Casualty Co.,* 247 *N. Y.* 271; 160 *N. E. Rep.* 367.

The "construction and effect of a written instrument is a matter of law to be determined by the court and not by the trier of the fact." And in the absence of an infirmity in a contract (none is here alleged) our "function" is to "enforce a contract as written." And if the "insured can not bring himself within the condition of the policy, he is not entitled to recover for the loss." *Cf. J. C. Ries & Sons, Inc.,* v. *Automobile Insurance Company of Hartford, Connecticut,* 121 *N. J. L.* 493, 496; 3 *Atl. Rep.* (*2d*) 610. In short, the law does not make a better contract for the parties than they chose to make for themselves. *Krieg* v. *Phoenix Insurance Company of Hartford,* 116 *N. J. L.* 467, 472; 185 *Atl. Rep.* 21. The facts that Robert Wallace became flustered and disappeared immediately after the accident did not legally operate to explain or to excuse his delay in fulfilling the conditions of the policy. *Cf. Rushing* v. *Commercial Casualty Insurance Co.,* 251 *N. Y.* 302; 167 *N. E. Rep.* 450.

Judgment is reversed, with costs.

*For affirmance*—None.

*For reversal*—The Chancellor, Chief Justice, Parker, Case, Bodine, Donges, Heher, Perskie, Porter, Colie, Dear, Wells, Rafferty, Hague, Thompson, Dill, JJ. 16.