32 N.J. Super. 471 (1954)
108 A.2d 464
BANKERS INDEMNITY INSURANCE COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, ETC., PLAINTIFF-RESPONDENT,
v.
A.E.A. CO., INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued August 30, 1954.
Decided October 20, 1954.
*473 Before Judges FREUND, STANTON and EWART.
Mr. Joseph F. Zeller argued the cause for plaintiff-respondent.
Mr. John Warren, Jr., argued the cause for defendant-appellant (Messrs. Parsons, Labrecque, Canzona & Combs, attorneys).
The opinion of the court was delivered by EWART, J.S.C. (temporarily assigned).
This appeal is from a summary judgment for $2,149.60, plus interest and costs, granted on plaintiff's motion and from a judgment denying defendant's motion for a summary judgment.
The pertinent facts of the controversy, which are not in dispute, are that on December 29, 1950 plaintiff issued to defendant its automobile liability insurance policy No. AP 143573 covering the period from January 7, 1951 to January 7, 1952, insuring defendant against claims for bodily injuries and property damage caused by motor trucks and trailers of the defendant up to the amounts named in the policy. The defendant company was engaged in the business as an interstate motor carrier transporting goods and merchandise by truck and trailer. The policy in question was filed with and approved by the Interstate Commerce Commission January 8, 1951 as a condition precedent to the issuance to the defendant by the I.C.C. of a certificate to operate as an interstate motor carrier.
On October 16, 1951 one of the defendant's trailers, while being drawn by a tractor owned and operated by one Ramsey, an independent contractor, was involved in an accident on a highway in Jersey City. Defendant gave plaintiff no notice *474 of the accident, but plaintiff first learned about the accident on February 20, 1952 through Ramsey's insurance carrier. On February 27, 1952 plaintiff notified defendant by letter of that date that due to the great delay in reporting the claim (in fact, the defendant never did report the claim to the insurance carrier), in violation of the terms of the insurance policy, plaintiff denied coverage under the policy but that, inasmuch as the plaintiff was primarily responsible for judgments against the insured under the terms of the New Jersey Financial Responsibility Act, if the plaintiff were compelled to make "any payment either on a judgment or for costs arising from this accident, we shall look to you for full reimbursement."
James A. Procopio and Francis Cicetti instituted suit against Ramsey, the independent contractor, and against the defendant in this suit for damages arising out of the accident of October 16, 1951. The plaintiff insurance company settled the suit by payment to the plaintiffs therein of the sum of $1,285.50, including costs.
Again on November 6, 1951 one of the defendant's trailers, again being drawn by a tractor owned and operated by Ramsey, an independent contractor, was involved in another accident on a highway in South Amboy. Defendant gave plaintiff no notice of the accident until on or about February 8, 1952 when the defendant forwarded to the plaintiff by mail a summons and complaint that had been served upon it in a suit instituted by one Salvatore Vangieri against Ramsey and against the defendant in the present suit, growing out of the said accident of November 6, 1951. Plaintiff insurance company settled that suit by the payment of $864.10 including costs.
Settlement of both suits was effected by the plaintiff insurance company without any notification first being given to the defendant.
Again on February 27, 1952, plaintiff wrote the defendant another letter concerning the delay in giving notice of the accident on November 6 of the same purport as its first letter of February 27, 1952 above mentioned.
*475 Plaintiff has brought this suit against the defendant to recover from the defendant, the assured, the said sums of $1,285.50 and $864.10 so paid out by plaintiff in settlement of the two suits arising out of the accidents above mentioned.

PROVISIONS OF THE INSURANCE POLICY
Under the heading of "Insuring Agreements" there is printed in the policy in question and as a part thereof the following provisions:

"I Coverage A  Bodily Injury Liability
To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile.

Coverage B  Property Damage Liability
To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the ownership, maintenance or use of the automobile. * * *

II Defense, Settlement, Supplementary Payments
As respects the insurance afforded by the other terms of this policy under coverages A and B the company shall:
(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient; * * *."
There is printed in the body of the policy under the heading of "Conditions" the following provision:
"6. Notice of Accident When an accident occurs written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonable obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses."
There are many endorsements annexed to the policy, including an endorsement required by the statutes of Florida, *476 another endorsement required by the statutes of Virginia, another endorsement required by the statutes of New Hampshire, and an endorsement required of interstate motor carriers under section 215 of the Interstate Commerce Act (U.S.C.A. Title 49, section 315). The last mentioned endorsement reads as follows:

"ENDORSEMENT FOR MOTOR CARRIER POLICIES OF INSURANCE FOR BODILY INJURY LIABILITY, AND PROPERTY DAMAGE LIABILITY, UNDER SECTION 215 OF THE INTERSTATE COMMERCE ACT
The policy to which this endorsement is attached is an automobile bodily injury liability and property damage liability policy, and is hereby amended to assure compliance by the insured, as a motor carrier of passengers or property, with section 215 of the Interstate Commerce Act, and the pertinent rules and regulations of the Interstate Commerce Commission.
In consideration of the premium stated in the policy to which this endorsement is attached, the Company hereby agrees to pay any final judgment recovered against the insured for bodily injury to or the death of any person or loss of or damage to property of others (excluding injury to or death of the insured's employees while engaged in the course of their employment, and loss of or damage to property of the insured, and property transported by the insured, designated as cargo), resulting from the negligent operation, maintenance, or use of motor vehicles under certificate of public convenience and necessity or permit issued to the insured by the Interstate Commerce Commission, or otherwise under Part II of the Interstate Commerce Act, within the limits of liability hereinafter provided, regardless of whether such motor vehicles are specifically described in the policy or not. It is understood and agreed that upon failure of the Company to pay any such final judgment recovered against the insured, the judgment creditor may maintain an action in any court of competent jurisdiction against the Company to compel such payment. The bankruptcy or insolvency of the insured shall not relieve the Company of any of its obligations hereunder. The liability of the Company extends to such losses, damages, injuries, or deaths whether occurring on the route or in the territory authorized to be served by the insured or elsewhere, except as follows:
NO EXCEPTIONS
(Name as exceptions only States in which the insured's operations are covered by other insurance)
The liability of the Company on each motor vehicle for the following limits shall be a continuing one notwithstanding any recovery hereunder: * * *
Nothing contained in the policy or any other endorsement thereon, nor the violation of any of the provisions of the policy or of any *477 endorsement thereon by the insured, shall relieve the Company from liability hereunder or from the payment of any such final judgment.
The insured agrees to reimburse the Company for any payment made by the Company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the Company would not have been obligated to make under the provisions of the policy, except for the agreement contained in this endorsement.
This endorsement may not be canceled without cancelation of the policy to which it is attached. Such cancelation may be effected by the Company or the insured giving thirty (30) days' notice in writing to the Interstate Commerce Commission at its office in Washington, D.C., said thirty (30) days' notice to commence to run from the date notice is actually received at the office of said Commission."
Paragraph 6 of the "Conditions" contained in the policy, supra, required that the assured, upon the occurrence of an accident, give written notice to the insurance carrier "as soon as practicable." With respect to the accident of October 16, the assured never did give notice to the insurance carrier of the occurrence of the accident and it was not until February 20 following that the insurance carrier learned of the accident through an outside source. That was a lapse of 127 days. With respect to the accident of November 6, the assured gave notice to the carrier on February 8, after suit had been started, a lapse of 94 days. The law is well settled in this State that as between the carrier and the assured, the clause in the policy requiring the assured to notify the carrier of the occurrence of an accident as soon as practicable is a condition precedent which must be fulfilled by the assured to fix liability on the carrier. Weller v. Atlantic Casualty Ins. Co., 128 N.J.L. 414 (Sup. Ct. 1942). And it is likewise settled in this State that a breach of the condition precedent operates as an avoidance of the carrier's liability, as between the carrier and the assured, regardless of whether actual prejudice has ensued therefrom. Kindervater v. Motorists Casualty Ins. Co., 120 N.J.L. 373 (E. & A. 1938); Whittle v. Associated Indemnity Corp., 130 N.J.L. 576 (E. & A. 1943). In the case last cited, there was a failure to comply with the condition in the policy requiring the assured to give notice of an accident to the *478 carrier as soon as practicable. The court held that the test of liability as between the assured and the carrier was not whether the failure to fulfill the condition precedent prejudiced the insurer but that the correct test was "Was a condition precedent of the policy unfulfilled by the assured? If it was then, if the insurer so chooses and it did so choose, the policy is at an end."
We conclude that the failure of the assured to give notice of the occurrence of the accidents to the carrier for a period of 127 days in the first case and for a period of 94 days in the second case constituted in each case a breach of the condition requiring the assured to notify the carrier of the occurrence of an accident "as soon as practicable"; that the condition was not fulfilled by the assured; and that, therefore, as between the assured and the carrier the policy was at an end and there was no liability resting on the carrier.
However, by the provisions of the endorsement annexed to the policy, as set forth above, required by the Interstate Commerce Commission, it was specifically provided that a violation of any of the provisions of the policy or of any endorsement thereon by the insured should not relieve the company from liability under the policy or from the payment of any final judgment secured by one suffering personal injury or property damage. But in connection with the provision last mentioned, and as a part of the endorsement, it was further provided that the assured should reimburse the carrier
"for any payment made by the company on account of any accident, claim or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy, except for the agreement contained in this endorsement."
The insurance carrier, plaintiff in this suit, recognizing its liability to pay by reason of the aforesaid endorsement required by the Interstate Commerce Commission, notwithstanding a breach of the condition of the policy by the assured, *479 and in pursuance of the provisions in the insuring agreements, supra, which gave the carrier the right to make such investigation, negotiation and settlement of any claim or suit as it might deem expedient, proceeded to settle the claims arising out of the accidents occurring October 16 and November 6, 1951 without waiting for the claims sued upon to be reduced to judgments.
But the defendant contends that there were no allegations in the complaint claiming or proof before the trial court showing that plaintiff suffered any loss by reason of defendant's neglect to give promptly notice of the occurrence of the accidents; that there was no proof to show that the plaintiff was deprived of any defense to the suits mentioned by reason of defendant's failure to give the requisite notice of accidents; and that there was no proof to show that failure of the defendant (the assured) to give the requisite notice of the accidents in any way prejudiced the plaintiff. Granting the truth of these contentions, they can avail the defendant nothing. The requirement in the policy that notice of accident be given by the assured to the company "as soon as practicable" is a condition precedent that must be fulfilled by the assured to fix liability upon the insurance company. Here there was an admitted failure to fulfill that condition. Hence, as between the assured and the insurance company, the breach of the condition terminated liability under the policy. Kindervater v. Motorists Casualty Insurance Co., supra; Weller v. Atlantic Casualty Insurance Co., supra; Whittle v. Associated Indemnity Corp., supra.
And the defendant further contends that it was given no notice of the proposed settlements made by the insurance carrier; that there were no proofs before the trial court to show that the settlements made by the insurance company were fair; no proofs that the defendant (the insured) was in fact and in law liable to the plaintiffs in the suits mentioned; and no proof that the settlements were made in good faith by the plaintiff insurance company. In connection with these last mentioned defenses, it is to be noticed that *480 the "Insuring Agreements" contained in the policy, supra, expressly authorized the insurance company to
"make such investigations, negotiation and settlement of any claim or suit as it deems expedient."
There is nothing in the contract of insurance limiting the right of the insurance company to effect settlements only upon notice to the assured. On the contrary, by the terms of the policy the right to effect a settlement of claims, rather than to defend suit, is optional with the insurance company. The policy entrusts to the insurance carrier the decision as to whether or not claims shall be settled. In the case at bar, the assured defendant certainly had notice of the pendency of the claims against it because suit was brought against it and process served with respect to each of the claims afterwards settled by the insurance company.
Defendant relies upon the following cases, viz., Travelers Ins. Co. v. Ship-By-Truck Co., et al., 95 F.2d 149 (C.C.A. 8 1938); Travelers Mutual Casualty Co. v. Herman, 116 F.2d 151 (C.C.A. 8 1940); Illinois Casualty Co. v. Krol, 324 Ill. App. 478, 58 N.E.2d 473 (App. Ct. 1944); and Employers Mutual Casualty Co. v. Nicholas, 124 Colo. 544, 238 P.2d 1120 (Sup. Ct. Colo. en banc 1951), to support its contention that before an insurance carrier may recover from its assured under a reimbursement clause contained in the policy, the complaint in such suit must allege and there must be supporting proof before the court establishing that (1) notice of the proposed settlement was given the assured; (2) the settlement was fair; (3) in law the assured was liable to the claimants in whose favor the settlement was made; (4) failure of the assured to give proper notice of the accidents to the insurance company prejudiced the company in its investigation and in the preparation of its defense against the claims; and (5) the settlement was made in good faith.
The Ship-By-Truck Co. case was a suit by the insurance carrier against the assured under the reimbursement clause to recover monies paid out by the insurance company. *481 However, the phraseology of the reimbursement clause was quite different than in the case at bar. In that case, the Court of Appeals in sustaining a dismissal of the complaint by the trial court, made this significant statement:
The insurance company could have required reimbursement for any payment necessitated by the rider which the company could have escaped had the policy stood without it.
In the case at bar, the reimbursement clause in effect complies with the suggestion by the court contained in the last quotation. We think that case affords no support to the defendant in the present suit.
The Herman case, decided two years after the decision in the Ship-By-Truck Co. case, was a suit by the company against the insured under the reimbursement clause contained in the policy. The reimbursement clause was quite different than the one involved in the Ship-By-Truck Co. case and in effect followed the suggestion of the Court of Appeals in the Ship-By-Truck Co. case as to what the insurance company could have required under its reimbursement clause. In the Herman case, the Court of Appeals reversed a judgment in the trial court in favor of the defendant and remanded the case for a new trial.
The Krol case involved a compulsory auto insurance policy under the Illinois statute and a suit by the insurance carrier for reimbursement of monies paid out by it which it would not otherwise have been compelled to pay except for the rider to comply with the Illinois statute. In that case there was judgment for the plaintiff. The court held that generally, where an insurance carrier, although not liable to the insured because of non-coverage or violation of policy by the insured, is nevertheless liable to third persons because of statutory requirements, the insurance carrier is entitled to reimbursement from the assured of any payments made to such third persons by reason of the insurer's statutory liability. That case, however, is authority for the proposition that in a suit by an insurance carrier against assured for reimbursement, the plaintiff is obliged to prove that the *482 settlement was fair; that the defendant was liable to the claimants who received the settlements; and that the whole transaction was conducted in good faith. In that case, those necessary facts were stipulated so that there was no real contest over those questions.
The Nicholas case involved a suit by the insurance carrier against the assured for reimbursement of monies paid out in settlement of a claim against the assured. The terms of the policy, together with the riders thereto annexed, were very similar to those in the case at bar. The policy by its terms obligated the insurer to pay any final judgment against the assured arising out of the maintenance or use of certain motor vehicles of the assured. The policy contained a provision that the insurance carrier should have the right "to make such investigation, negotiation and settlement of any claim or suit as may be deemed expedient by the company." And the reimbursement clause was very similar to the one in the case at bar. In the suit by the insurance carrier against the assured to recover the amount of a compromise settlement paid out by the company, judgment was entered in the trial court for the defendant and affirmed on appeal. The court held that the insurer was not entitled to reimbursement for the amount expended by it pursuant to a voluntary compromise agreement made with the injured person when there was no evidence establishing the fact of the defendant's liability and final judgment by the injured person against the assured had not been entered. In passing on the case the court noted that there was no judgment obtained by the claimant against the assured; that by the terms of the rider annexed to the insurance policy the insurer agreed to pay any final judgment against the insured; that the insurance carrier had not seen fit to demand a judicial determination of the defendant's (assured's) liability; and that for aught that appeared in the record, the accident might have been due to the negligence of the claimant rather than to the negligence of the insured.
Counsel have not called to the attention of the court any New Jersey adjudications on these questions. The attention *483 of the court, however, has been called to two cases decided by the Supreme Judicial Court of Massachusetts, namely, Abrams v. Factory Mutual Liability Ins. Co., 298 Mass. 141, 10 N.E.2d 82 (1937) and Service Mutual Liability Ins. Co. v. Aronofsky, 308 Mass. 249, 31 N.E.2d 837, 839 (1941). In the Abrams case the assured had a $5,000 liability policy. The insurance company defended a claim against the assured which resulted in a $15,000 judgment, $10,000 in excess of the policy limit. The assured brought suit against the insurance carrier in two counts, the first in contract alleging failure of the insurance carrier to use proper care and due diligence in the investigation, preparation and trial of the case resulting in the adverse judgment mentioned and also that the carrier had willfully failed and refused to settle the claim against the assured within the policy limits of $5,000 when the insurance carrier was in a position to do so, and in the second count, in tort, based upon the alleged negligence of the insurance carrier in not having effected a settlement of the claim before judgment. In that case the court held that the policy gave the insurance carrier the sole right to defend a suit to the entire exclusion of the assured; that such clause is inserted primarily for the benefit of the carrier in the sense that where there is a conflict of interest between the assured and the insurer, the insurer may exercise the right to defend for its own advantage, even though from the standpoint of the assured a different course would have been preferable. And the court further remarked that under the terms of the policy settlement was optional with the insurance carrier; that the policy by its terms entrusts to the insurance carrier a decision as to whether or not settlement should be made; and that its decision not to settle but to defend a suit, exercised in good faith, is final and does not give rise to a cause of action by the assured even though the assured be prejudiced by such decisions.
The Aronofsky case involved a suit by the insurance carrier against the assured for reimbursement of amounts paid out in settlement of a claim against the assured. Judgment was *484 entered for the plaintiff insurance company. The policy gave the insurance carrier the right to settle claims against the assured in any way it deemed expedient. In construing this clause the court said:
"Section (a) of paragraph II of the policy gave the plaintiff the right to settle claims against the defendant in any way it deemed expedient, and to defend any suits against the defendant covered by the terms of the policy. The defendant's contention, that the plaintiff's settlement with Mank was improper, apparently based on the ground that the defendant had no notice of it, cannot be sustained. * * * But even if he [the insured] were ignorant of the settlement, it is not open to attack by him in the absence of evidence showing fraud or negligence on the part of the plaintiff. Long v. Union Indemnity Co., 277 Mass. 428, 430, 178 N.E. 737, 79 A.L.R. 1116. Davidson v. Maryland Casualty Co., 197 Mass. 167, 171, 83 N.E. 407. The `policy entrusts the matter of settlement to the judgment of the insurer, and * * * its judgment, exercised in good faith, is final.' Abrams & Co. v. Factory Mutual Liability Insurance Co., 298 Mass. 141, 145, 10 N.E.2d 82, 84, and cases cited."
In the case at bar there is no allegation or suggestion that the plaintiff was guilty of any fraud or bad faith in effecting settlement of claims against the assured. Not only did the assured in this case delay for an unreasonably long period the giving of notice to the insurance carrier of the occurrence of the accidents (a delay of 127 days in the first case and 94 days in the second case), but after being notified by the insurance carrier of its disclaimer because of the failure to give notice and that the insurance carrier would look to the assured for reimbursement, the assured apparently did nothing about the matter and by its silence and failure to take any steps in the matter apparently acquiesced in the action by the insurance carrier in effectuating settlement of the claims.
The rules enunciated in the Krol and in the Nicholas cases above cannot be reconciled with the pronouncements by the Supreme Judicial Court of Massachusetts in the Abrams and Aronofsky cases, supra. In the absence of any adjudications on the point in this State, we prefer to adopt the rule enunciated in the Massachusetts cases and to hold *485 that in this suit by the insurance carrier against the assured for reimbursement it was unnecessary for the plaintiff to allege or prove that notice of the proposed settlement was given the assured; that the settlement was fair; that the assured was in law liable to the claimants in whose favor the settlements were made; that the settlements were made in good faith; and that failure of the assured to give prompt notice of the occurrence of the accidents prejudiced the insurance carrier in its investigation of and preparation for and defense of the claims.
Finally, defendant contends that the fact that defendant was the holder of an interstate commerce franchise in and of itself does not impose liability upon it when its trailer is being pulled on the open road by an independent contractor; that the liability imposed upon the holder of the franchise is imposed only when the franchise is in use at the time of the occurrence of the accident, citing Venuto v. Robinson, 118 F.2d 679 (C.C.A. 3 1941); and that in this case there was no proof or allegation that the defendant's trailer at the time of the occurrence of the accidents was engaged in interstate commerce.
One of the accidents occurred in Jersey City and the other in South Amboy, both within the State of New Jersey. There was before the court an allegation by the insurance carrier, not controverted by the answer or affidavits of the defendant, that the accident in Jersey City occurred while the defendant's trailer, loaded with green coffee, was being transported from New York City to the Nestle Company at Freehold, N.J. (Exhibit A annexed to affidavit of C.E. Waterman). With respect to the accident in South Amboy, there appears to have been no proof before the court as to whether the trailer on that occasion was actually engaged in interstate commerce. However, a reference to the terms of the policy and the endorsement thereto attached required by the I.C.C., supra, reveals this clause:
"The liability of the Company extends to such losses, damages, injuries, or deaths whether occurring on the route or in the territory authorized to be served by the insured or elsewhere, * * *."
*486 That provision fixes liability on the insurance carrier wherever the accident occurred.
Finding no error in the judgment entered below, the same is affirmed and the appeal dismissed.