MARYLAND CASUALTY COMPANY, a corporation of the State of Maryland, Plaintiff,

v.

Edward EMERY et al., Defendants.

MARYLAND CASUALTY COMPANY, a corporation of the State of Maryland, Plaintiff,

v.

John EMERY et al., Defendants.

Civ. Nos. 563-53, 983-53.

United States District Court
D. New Jersey.

July 25, 1958.

Edward E. Kuebler, Newark, N. J., for plaintiff.

Arthur C. Gillette, Newark, N. J., for defendants Quellmalz and Rea.

Louis Winer, Morristown, N. J., for defendants Edward & John Emery and Eugene Wolf

WILLIAM F. SMITH, District Judge.

These are civil actions under the Declaratory Judgments Act, 28 U.S.C.A. § 2201. The jurisdiction of the Court is founded upon diversity of citizenship. The plaintiff, an insurer, seeks a judgment declaratory of the rights and liabilities of the respective parties under a policy of insurance issued to one of the defendants, Edward Emery. The cases were tried by the Court on a stipulation of facts and additional evidence offered by the said defendant.

There are joined as defendants not only Edward and John Emery, the in-

sured as defined in the policy, but also Hilda M. Quellmalz and Thomas Rea, who have instituted actions in the Morris County Court against Edward and John Emery. The action of Hilda Quellmalz is for damages sustained by reason of the death of one Carl A. Quellmalz; the action of Thomas Rea is for damages sustained by reason of personal injury. There is also joined as a defendant one Eugene Wolf, who has made claim for personal injuries.

### Facts

#### I.

The plaintiff issued to the defendant Edward Emery a motor vehicle liability policy which covered the automobile therein described, to wit, a Buick sedan. The policy by its terms extended coverage from 12:01 A.M., Standard Time, on May 18, 1955, to 12:01 A.M., Standard Time, on May 18, 1956.

#### II.

The policy was the standard liability policy in which the plaintiff agreed, among other things, to pay on behalf of the "insured" any sums which the latter might be required to pay to others as damages for personal injury or property damage "caused by accident and arising out of the ownership, maintenance or use" of the automobile described therein. The coverage thereunder extended to the "insured" as therein defined, which included not only the "named insured" but also "any person while using the automobile and any person * * * responsible for the use thereof, provided the actual use of the automobile (was) by the named insured * * * or with the permission" of the named insured.

#### III.

The policy contains, in addition to others, the following condition: "When an accident occurs written notice shall be given by or on behalf of the insured to the company or any of its authorized agents *as soon as practicable.* Such notice shall contain particulars *sufficient to identify the insured* and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses." (Emphasis by the Court.) The quoted provision is contained in the "Notice of Accident" condition, Condition 1.

#### IV.

The policy also contains the following condition: "The insured shall cooperate with the company and, upon the company's request, shall attend hearings and trials and shall assist in * * *, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits." The quoted provision is contained in the "Assistance and Cooperation of the Insured" clause, Condition 17.

#### V.

The policy also provides: "No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, * * *." This provision clearly imposed upon the insured the duty to comply with the terms and conditions of the policy as a condition precedent to his right to its enforcement against the company.

#### VI.

The vehicle covered by the said policy was involved in an accident on March 3, 1956, in the Borough of Mountain Lakes, County of Morris, New Jersey. This accident apparently resulted in the death of one person and the injury of two others. The defendant John Emery was admittedly the driver of the vehicle at the time of the accident. The defendants Edward Emery and Eugene Wolf were passengers. Thereafter damage suits were instituted, and, we are informed, these suits are still pending.

#### VII.

The plaintiff was notified of the accident by telephone on March 5, 1956, and it would appear from the stipulation of facts that it immediately assigned an adjuster to the matter. The adjuster conferred with both Edward Emery and John Emery, who signed written statements in which they described the acci-

dent. There was no other written notice. The only statement before the Court is that of the defendant Edward Emery, and this would appear to contain "reasonably obtainable information respecting time, place and circumstances of the accident" and the names of the witnesses who were occupants in the car. Thereafter, on March 14, 1956, one Eugene Wolf, a passenger in the vehicle at the time of the accident, signed a written statement in which he described the occurrence. This statement is likewise before the Court.

### VIII.

The statements given by both Edward and John Emery were wilfully false in that each of them identified Edward Emery as the driver of the vehicle at the time of the accident, when, in truth and in fact, as is now admitted, the said John Emery was the driver. The written statement of Eugene Wolf was likewise wilfully false. There is no evidence that these statements were otherwise false, and there is no contention that they were. There is no contention here that the false statements were prompted by an intent to defraud the plaintiff; in fact, it appears from the corrected statements of Edward Emery and Eugene Wolf that the purpose of the false statement was to protect the defendant John Emery against possible charges under the motor vehicle laws.

### IX.

Thereafter, on March 16 or 17, 1956, a counsellor-at-law, who represented the defendants Edward and John Emery, advised the plaintiff by telephone that John, and not Edward, was the driver of the motor vehicle at the time of the accident. It would appear from the stipulation that the plaintiff did not act on this information until March 28, 1956, when the adjuster, after a conference with the defendant Edward Emery, obtained a written statement in which the defendant John Emery was correctly identified as the driver of the vehicle at the time of the accident. The said Eugene Wolf gave a corrected statement on April 12,

1956, after a conference with the adjuster.

### X.

It appears, however, that after March 16, but before March 28, and particularly on March 22, 1956, the attorney who represented both John and Edward Emery, wrote the plaintiff, attention of the adjuster, the following:

"Edward Emery was served the inclosed summons and complaint on March 21st.

"Will you please be good enough to contact me in this matter, in view of the fact that it was not Edward Emery who drove the car, but his brother, John Emery.

"The Motor Vehicle Department in Trenton has been notified, and the Prosecutor's office has been notified. In any event please contact me."

This letter makes reference to a summons and complaint served upon the defendant Edward Emery, and it appears from the stipulation of facts that this summons and complaint was forwarded to the plaintiff. It should be further noted that this letter also correctly identified the defendant John Emery as the driver of the vehicle.

### XI.

A civil action was instituted against the defendants Edward and John Emery in the Morris County Court by Hilda M. Quellmalz, administratrix ad prosequendum of Carl A. Quellmalz, deceased, and Thomas Rea. The action of the former is still pending, and that of the latter has been dismissed without prejudice. The plaintiff advised the defendant Edward Emery on April 3, 1956, that it would defend the action under a complete reservation of its rights under the policy. The plaintiff similarly advised the defendant John Emery on October 9, 1956, upon receipt of the summons and complaint served upon him apparently in the same action. The situation is not entirely clear but it appears that an additional action was instituted against only the defendant John Emery. It should be also

noted that Eugene Wolf has made claim for damages for personal injuries.

### Discussion

The plaintiff here contends that the failure of the defendants Edward and John Emery "to give truthful information about facts * * * which were in their possession was a failure on their part to comply with Conditions 1 and 17 of the policy of insurance." We note, however, that the duty of the insured to give written notice of the accident, under the provisions of the former, and the duty of the insured to render cooperation to the company, under the provisions of the latter, are independent obligations; there may be a breach of both conditions, or there may be a breach of one without a breach of the other. The conditions of the policy of insurance must, therefore, be regarded as separate and independent.

We shall direct our attention to the first condition, which required the insured to give written notice of the accident to the company or an authorized agent "as soon as practicable" after the occurrence. This condition also required the insured to give "particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses." There can be no doubt that the original statements given by Edward and John Emery were deficient in that the driver of the vehicle was falsely identified as Edward; there is no contention here that the original statements were otherwise false or deficient.

■ The condition has been construed by the courts of this state as a condition precedent, and it has been uniformly held that its breach is sufficient to void a policy of insurance even in the absence of proof that the insurer has been prejudiced. Whittle v. Associated Indemnity Corporation, 130 N.J.L. 576, 33 A.2d 866; Bankers Indemnity Insurance Company v. A. E. A. Co., 32 N.J.Super. 471, 108 A.2d 464; Miller v. Zurich General Accident & Liability Ins. Co.,

36 N.J.Super. 288, 115 A.2d 597. The rule is succinctly stated in the Bankers Indemnity case, supra [32 N.J.Super. 471, 108 A.2d 468], as follows: "it is * * * settled in this State that a breach of the condition precedent operates as an avoidance of the carrier's liability, as between the carrier and the assured, regardless of whether actual prejudice has ensued therefrom."

It was stated in the case of Miller v. Zurich General Accident & Liability Ins. Co., supra, 115 A.2d at page 600: "the determination of what is compliance with a provision of this kind must be adjudged in the light of the particular fact situation presented, including such circumstances as those related to the substance or triviality of the accident, knowledge by the insured as to its occurrence, reliance upon another insured to give notice, and injury to the insured or other reasonably justifiable extenuation for delay. *The determination is not one of mere time lapse.*" (Emphasis by the Court.) It seems reasonably clear that under this rule of construction the Court may consider not only the particular circumstances enumerated but any other circumstances which may assist in a determination of the issue.

We entertain no doubt that if the defendant Edward Emery had persisted for an unreasonable length of time in his original false statement that he, and not John, was the driver of the motor vehicle at the time of the accident, the plaintiff would be entitled to void the policy of insurance on the ground that the insured had failed to comply with the terms of the condition. A notice wilfully false in the identification of the insured, if uncorrected for an unreasonable length of time, would be tantamount to no notice. There would be a failure to comply with the condition of the policy of insurance.

However, the question here presented is whether or not the original statement, in which the driver of the motor vehicle was falsely identified, coupled with the written statement of March 28, 1956, in which the driver of the motor vehicle was correctly identified, was a substantial

compliance with the condition. This question is not entirely free from doubt and we have found no case in which a similar factual situation was presented.

We direct our attention to the case of Miller v. Zurich General Accident & Liability Insurance Co., supra, in which it was held that a failure to give notice within twenty-one days after the accident was unreasonable and fatal as a matter of law. It should be noted that in the cited case there was no notice of an accident until after the summons and complaint in a damage suit was served upon the insured. The Court observed, 115 A.2d at page 601: "There is no reason from the testimony and findings of the trial court to suppose that anyone in the (insured's) household was planning to notify the company at all prior to the institution of the damage suit." It will be remembered that in the case before us oral notice, coupled with the statements of the insured, supra, was given two days after the accident.

The Court was careful to point out that its determination rested on the facts of that case. The Court, after a review of the cases in other jurisdictions, stated, 115 A.2d at page 601: "The cases which are influenced by the factor of prejudice are, of course, not authoritative in this jurisdiction, where the policy provisions are such as these. This is not to say, however, that the fair construction of such a policy provision in application to a particular set of facts should not take account of the purpose of the provision from the insurer's viewpoint * * * as well as the problems of an insured in making compliance." The Court observed further: "A difference of weeks (and sometimes of days) in notification to an insurer of an accident may well spell the difference between its ability advantageously to prepare its defense or settle a claim and its relegation to a less favorable position." We agree with the observation where, as in the cited case, there was no notice of any kind given until after twenty-one days had elapsed. That, however, is not the situation in the present case.

The ultimate decision in this case must rest on its own peculiar facts, considered in their entirety, and these may be briefly summarized. The plaintiff was notified of the accident within two days after its occurrence and apparently initiated an investigation, during the course of which its representative obtained written statements from Edward Emery, John Emery and Eugene Wolf, the only occupants of the automobile. These statements were false in that they identified the driver of the vehicle as Edward, but we must assume, in the absence of any evidence or contention to the contrary, that the description of the accident was truthful and adequate. There followed what appears to have been a conscientious effort to correct the false information.

An attorney at law, who represented both Edward and John Emery, orally advised the plaintiff that John, and not Edward, was the driver of the motor vehicle at the time of the accident; this information was communicated to the plaintiff on March 16 or 17, within two weeks of the accident. The correct information was also contained in a letter, supra, forwarded to the company on March 22, and presumably received by it a day or two later. The plaintiff's representative interviewed the defendant Edward Emery on March 28, 1956, within twenty-five days of the accident, and obtained a corrected statement; the witness Wolf also corrected his statement when interviewed by the same representative on April 12, 1956. This situation clearly differs from that in which no notice of any kind is given and the insurer remains completely uninformed.

It will be remembered that the plaintiff initiated its investigation immediately upon receipt of notice of the accident; signed statements were taken from Edward and John Emery on the same day. The representative of the plaintiff did not act with the same dispatch after the plaintiff was notified by telephone that the original information was false. It is fair to assume that if he had, a corrected written statement from Edward Emery

would have been available on March 17, or shortly thereafter. This assumption is based upon the admitted fact that Edward Emery, when interviewed, corrected the falsity of his original statement.

We are of the opinion that a determination of the ultimate question can be made only upon a consideration of the factual situation in the light of the purpose of the condition. The purpose of the condition was to afford the plaintiff an opportunity: first, to promptly initiate an investigation into the causes of the accident; second, to determine the liability of the insured and consequently its own liability; and third, to make preparation for the defense of any action that might ensue as a result of the accident. There was a substantial compliance with the condition if the plaintiff, notwithstanding the original false statement, was able to pursue these purposes within a reasonable time after the accident.

The plaintiff initiated its investigation two days after the accident, upon receipt of oral notice of its occurrence. It obtained written statements from John and Edward Emery on March 5, and a written statement from Eugene Wolf on March 14. These statements were admittedly false in only one respect, to wit, the false identification of the driver of the vehicle; the facts of the accident and the circumstances surrounding its occurrence were adequately described in the statements of Edward Emery and Eugene Wolf. If the plaintiff suffered any disadvantage by reason of this false information, this disadvantage was temporary and was limited to only one aspect of the statement; the plaintiff was orally advised as to the correct identification of the driver within eleven days after the false statements were given and within fourteen days after the accident occurred. A corrected written statement was given by the defendant Edward Emery, the named insured, on March 28, but at that time the plaintiff was already in possession of correct information given to it by the said defendant's attorney.

There is nothing before the Court from which it may be determined that there were other witnesses to the accident except one Thomas Rea, who was injured. If the only witnesses to the accident were the occupants of the motor vehicle, the plaintiff had all the information necessary upon receipt of the correct information. If there were other witnesses to the accident, the plaintiff, with full knowledge that there had been an accident, and notwithstanding the false statement, was free to make any investigation it deemed advisable. It seems only fair to assume that such an investigation was made.

It is equally difficult to perceive how the plaintiff's determination of the insured's liability, and consequently its own, was adversely affected. The facts of the accident were known to it, and if the insured, whether Edward or John Emery, were liable in damages, the plaintiff was answerable under the express terms of the policy of insurance. It is likewise difficult to perceive how the plaintiff was adversely affected in the preparation of its defense of the damage suits, because it was in possession of the correct information when called upon to defend these suits. In fact, it is admitted that the plaintiff undertook the defense of these suits under a specific reservation of its rights to avoid the policy.

We are of the opinion that under the circumstances of this case the original written statement of March 5, in which the driver of the vehicle was falsely identified, coupled with the corrected written statement of March 28, in which the driver of the vehicle was correctly identified, was written notice of the accident and a substantial compliance with the condition of the policy of insurance, unless, of course, it is held that the original false statement precluded correction. We are of the opinion that it may not be so held. If it were so held an insurer could easily declare a forfeiture of a

policy of insurance in any situation in which there was a wilful misstatement of fact in the original notice of the accident, even in the absence of fraud or collusion. The forfeiture of a policy of insurance, ordinarily frowned upon by the law, could thus be easily effected.

We next direct our attention to the "Assistance and Cooperation" clause, supra, which required the insured to "cooperate with the company and, upon the company's request" to "attend hearings and trials" and to assist in "securing and giving evidence, obtaining attendance of witnesses, and in the conduct of the suits." The charge that the insured, both Edward and John Emery, failed to cooperate, as required by this clause, appears to be based solely on the evidence that each of them gave a statement in which they falsely identified the driver of the vehicle at the time of the accident. There is no other alleged failure of cooperation.

It should be noted, however, that the stipulation of facts does not disclose whether or not the defendant John Emery, an additional insured, either gave, or was called upon by the company to give, a corrected written statement. The stipulation of facts likewise does not disclose whether or not the said defendant, at the request of the plaintiff, failed to otherwise cooperate, as required by the condition. It seems only fair to assume that if such cooperation were lacking there would have been an adequate reference to it in the stipulation of facts.

We are of the opinion that the stipulated facts will not support a determination that the insured failed to comply with this condition of the policy. Rockmiss v. New Jersey Manufacturers' Ass'n Fire Ins. Co., 112 N.J.L. 136, 169 A. 663. Any failure of cooperation ascribable to the false statements was cured when the correct information was given the plaintiff at the time it was called upon to defend the damage suits. Ibid.

The cited case of Rockmiss v. New Jersey Manufacturers' Ass'n Fire Ins. Co., supra, was one in which the insured had given a false statement which tended to exculpate him from liability for the accident covered by the policy of insurance. When the first of two actions was instituted the insured gave a correct statement which, it would seem, tended to inculpate him. The insurer sought to avoid liability on the ground that there had been a failure of cooperation.

The Court in passing upon the question of substantial compliance, said, 169 A. at page 665: "But if the withholding of the facts from the insurers, and the lulling of them into a false sense of security in respect of liability, be held to be within the intendment of this clause, there was in the instant case a substantial compliance with its terms. When the first action was instituted, the insurers were given a correct statement of the facts. Admittedly, they had ample time to investigate and prepare for trial, or adjust the claim if that were deemed to be the preferable course. They suffered no detriment or injury by reason of this alleged breach of the provisions of the contracts."

The Court concluded, 169 A. at page 665: "The proofs indisputably show that the insured substantially complied with the stated conditions of the policies, and that, in any event, the delay in advising the insurers of the facts did not result in the substantial impairment of any of their policy rights, or any detriment or injury, and therefore will not be permitted to work a forfeiture." This language, considered together with the language hereinabove quoted, would seem to clearly indicate that under the law of New Jersey a policy of insurance may be voided on the grounds of lack of cooperation, as distinguished from a failure to give notice of the accident, only where it appears that there is a failure of substantial compliance which results in the impairment of the rights of the insurer.

There is a statement in the cited case which would seem to cast some doubt on the pertinency of the decision. It is therein stated, 169 A. at page 665: "The policies were not made a part of the state of the case, and the excerpts taken therefrom do not contain a provision

that a breach of the so-called conditions shall provide grounds for forfeiture, or that compliance therewith is a condition precedent to recovery. Forfeitures by implication or by construction, not compelled by express requirements, are regarded with disfavor." We are inclined to regard this statement as dictum.

The decision of the Court, as we interpret it, rests squarely on the conclusion that in a situation, not identical with the one before this Court, but somewhat comparable, there was a substantial compliance with the assistance and cooperation clause of the policy of insurance. The presence or absence of a clause defining the condition as a condition precedent, a clause included in the policy of insurance before this Court, would not have led to a different result. If the conduct of the insured was such as to satisfy the assistance and cooperation clause, the rights of the insured under the policy of insurance could not be defeated by an additional clause which defined the condition as a condition precedent. A substantial compliance with the assistance and cooperation clause would satisfy its requirements, whether the clause were defined as a condition precedent or a condition subsequent.

■ The defendants urged in oral argument that under the express provisions of the Motor Vehicle Security-Responsibility Law, N.J.S.A. 39:6–23 et seq., and particularly Section 26 thereof, N.J.S.A. 39:6–48, the liability of the plaintiff under the policy of insurance became absolute upon the occurrence of the accident. The contention was not presented in the brief filed by the defendants and they have cited no cases in support of it, but we have, nevertheless, considered it.

We assume that the defendants rely on the several cases decided under the earlier Financial-Responsibility Law, N.J.S.A. 39:6–1 et seq. Steliga v. Metropolitan Casualty Ins. Co., 113 N.J.L. 101, 172 A. 793, affirmed 114 N.J.L. 156, 176 A. 331; United States Casualty Co. v. Timmerman, 118 N.J.Eq. 563, 180 A.

629; Woloshin v. Century Indemnity Co., 116 N.J.L. 577, 186 A. 44; Ambrose v. Indemnity Ins. Co., 120 N.J.L. 248, 199 A. 47; Atlantic Cas. Ins. Co. v. Bingham, 15 N.J.Super. 328, 83 A.2d 363, affirmed 18 N.J.Super. 170, 86 A.2d 792, affirmed 10 N.J. 460, 92 A.2d 1, 34 A.L.R.2d 1293. This law was completely revised in 1952, and the revision became effective on April 1, 1953. N.J.S.A. 39:6–23 et seq. The pertinent sections of the revision are limited in their application to a liability policy furnished as proof of financial responsibility as provided by the Act. There is no evidence before the Court that the policy of insurance here in question was so furnished.

Judgments in favor of the defendants and against the plaintiff, consistent with the findings of fact and conclusions of law, may be entered. The parties shall prepare and submit to the Court appropriate orders for judgment.