194 N.J. Super. 206 (1984)
476 A.2d 820
EDWARD K. ZUCKERMAN, ESQ., PLAINTIFF-RESPONDENT,
v.
NATIONAL UNION FIRE INSURANCE COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 2, 1984.
Decided May 11, 1984.
*207 Before Judges BISCHOFF, PETRELLA and BRODY.
*208 Walter E. Monaghan argued the cause for appellant, (Haggerty & Donohue, attorneys; J. David Woods, on the brief).
Anthony B. Vignuolo argued the cause for respondent (Borrus, Goldin & Foley, attorneys).
The opinion of the court was delivered by BISCHOFF, P.J.A.D.
There is only one issue in this appeal; whether it was error to grant plaintiff summary judgment on the ground that his "claims made" lawyers professional liability policy covered him even though he made no claim until after the policy had expired.
Plaintiff, Edward K. Zuckerman, is an attorney whose firm purchased a professional liability policy from defendant, National Union Fire Insurance Company. The original policy ran from February 25, 1980 to February 25, 1981. The policy was renewed for one year and expired on February 25, 1982.
The "insuring agreement" of the policy provided as follows with respect to coverage:
To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as money damages because of any claim or claims first made against the insured and reported to the Company during the policy period, arising out of any act or omission of the insured in rendering or failing to render professional services for others in the insured's capacity as a lawyer or Notary Public ... [Emphasis added]
And also provided for a defense in the following terms:
The Company shall defend any suit based on a claim of personal injury first made against the insured and reported to the Company during the policy period if such claim arises out of an act of the insured in rendering professional services ... and if such claim is caused by the insured or other person for whose acts or omissions the insured is legally responsible ... [Emphasis added]
The policy, by its terms, applied to acts or omissions "if claim is first made during the policy period or an extended reporting period purchased in accordance with Condition IV." The policy continues:
A claim is first made during the policy period or extended reporting period if:

*209 a) during the policy or extended reporting period the insured shall have knowledge or become aware of any act or omission which could reasonably be expected to give rise to a claim under this policy and shall during the policy period or extended reporting period give written notice thereof to the Company in accordance with Condition VII.
....
A claim shall be considered to be first made when the Company first receives written notice of the claim or of an event which could reasonably be expected to give rise to a claim. [Emphasis added]
There is no contention there is any "extended reporting period" applicable to this case.
"Policy period" is defined to mean "the period of time between the inception date shown in the Declaration and the effective date of termination, expiration or cancellation ..."
Condition VII, entitled Notice of Claim or Suit, provides:
Upon the insured becoming aware of any act or omission which could reasonably be expected to be the basis of a claim or suit covered hereby, written notice shall be given by or on behalf of the insured to the Company or any of its authorized agents as soon as practicable, together with the fullest information obtainable. If claim is made or suit is brought against the insured, the insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative.
At the top of the first page of the policy there is a box which is set off from the text which contains, on one side, the name and address of the company, and on the other, the following:
NOTICE
"Except to such extent as may otherwise be provided herein, the coverage of this policy is limited generally to liability for only those claims that are first made against the insured and reported to the Company while the policy is in force. Please review the policy carefully and discuss the coverage thereunder with your insurance agent or broker." [Emphasis added]
Finally, attached to the printed policy was a form issued by the agent, Herbert L. Jamison & Co., containing the name of the insured and terms of the policy such as premium and "Policy Period." Immediately under the insurance company's name at the top of this page the following words are printed: "LAWYERS PROFESSIONAL LIABILITY POLICY (THIS IS A CLAIMS-MADE POLICY  READ CAREFULLY)"
*210 The facts respecting the claim are undisputed. On April 13, 1978, Barbara Katz was exposed to a loud noise from a telephone message recording device used by her employer. She went to plaintiff Edward K. Zuckerman to ask him to represent her in a "third-party claim", apparently against the manufacturer of the recording device. Plaintiff agreed to represent her but then failed to file a complaint within the time allowed by the statute of limitations.
Katz and her husband filed a complaint charging plaintiff with "malpractice in failing to file a complaint within the statute of limitations." The complaint is dated September 9, 1981 (but the filing date is not shown in violation of R. 2:6-1(b)). Plaintiff admits he was served with the complaint on November 26, 1981. On depositions plaintiff conceded he knew he should have instituted suit for the Katzes prior to April 12, 1980, but "carelessly neglected to do so." Plaintiff asserts he did not notify defendant of his error because he did not know whether a claim was going to be made against him, though he knew a claim might be made.
In September 1980, after plaintiff informed the Katzes of his error, they returned to his office and, in response to his request, suggested they would be willing to settle for $10,000. Plaintiff thought that was too much money and still did not notify defendant. Sometime in 1981 the Katzes retained an attorney and while plaintiff spoke to him several times about the matter, he still did not notify defendant because he was embarrassed by the situation.
When the Katzes instituted suit against plaintiff the policy period had more than three months to run before the expiration date of February 25, 1982. Plaintiff engaged a lawyer to represent him and that lawyer did not notify defendant of the Katzes' claim or of the pending suit until December 28, 1982, 13 months after the complaint was served upon the plaintiff and 10 months after the policy had expired. Defendant refused to provide a defense to the plaintiff on the Katzes' law suit.
*211 Plaintiff instituted this action against defendant alleging defendant wrongfully refused to defend him. Defendant essentially contended plaintiff failed to comply with the notice provisions of the policy.
Cross-motions for summary judgment resulted in the granting of plaintiff's motion and the entry of a judgment directing defendant to immediately assume the defense of the Katzes' action pending against the plaintiff. That order was stayed pending appeal.[1]
The trial judge, relying on the case of Cooper v. Government Employees Ins. Co., 51 N.J. 86 (1968), ruled that since the defendant had not shown "appreciable prejudice it was required to defend the action brought by the Katzes against the plaintiff and pay a liability award." On this appeal the defendant contends the trial judge should have enforced the terms of the insurance contract and that he improperly required a showing of prejudice.
It is absolutely clear that the provisions of the policy relevant here are not ambiguous. The policy, in plain and unmistakenable terms, requires that a claim or suit against the insured arise or be first made against the assured during the policy period and that defendant be notified during the policy period of the claim. Had the claim first arisen or been asserted so close to the end of the policy period that the plaintiff would have had difficulty notifying defendant within the policy period, equitable considerations might come into play. However, plaintiff had more than ample time to notify defendant of the claim and the suit within the policy period.
Plaintiff knew in September 1980 that he had failed to file the suit for the Katzes within the period of the statute of limitations. *212 His policy had then been in effect for only seven months. He tried to negotiate a settlement with the Katzes and was unsuccessful. They retained an attorney. He negotiated with the Katzes' attorney without success. Still plaintiff did not notify defendant. The Katzes sued plaintiff in November 1981; the policy expired in February 1982; defendant was first notified in December 1982. Plaintiff had from September 1980 to the end of February 1982 to notify the insurance company that a claim had been made against him but he did nothing.
The reason for plaintiff's failure to give notice is clear. He was embarrassed by the situation. He hoped to settle the claim for a small amount of money, but was unable to do so. He was not misled by anything in the insurance policy. He voluntarily elected not to give notice of the claim under the policy because he thought it would be better for him not to do so. He has never claimed that he believed a notice after the expiration of the policy period would be sufficient, or would constitute compliance with the policy provision. In short, there is no basis for a finding that plaintiff acted reasonably and in good faith in withholding notice of claim until 10 months after the policy expired.
We turn to a consideration of whether or not the absence of a showing of prejudice resulting from late notice of claim is sufficient to void or invalidate the notice of claim provisions in the policy.
Both defendant and the trial judge claim it is and both rely upon Cooper. Id.
In that case the insured had been involved in an automobile accident which resulted in no damage to either car and insofar as she could determine no injury to anyone. She did not notify her insurance company until she was served with a summons and complaint almost two years later. The Supreme Court found the trial judge properly concluded that the insured acted reasonably and in good faith in failing to give notice, so that the *213 notice provision of the insurance policy had not been breached. 51 N.J. at 94-95.
The notice provision involved there differs from that involved in the present contract. It simply required the insured to give the carrier notice of any accident "as soon as practicable". The court there noted that N.J.S.A. 17:28-2 required the policy to be read to contain a provision that failure to give required notice within the time specified within the policy would not invalidate any claim if it was shown not to have been reasonably possible to give the notice within the prescribed time, and that notice was given as soon as was reasonable. 51 N.J. at 88, n. 1. Thus, the question of what was reasonable notice depended on the circumstances of the case.
In discussing the notice requirements of the policy there involved, the court said:
Although the policy requires notice "[i]n the event of an accident, occurrence or loss," and so provides without any exception, the cases hold a trivial or inconsequential event is beyond the intent of the provision. (citations omitted). This does not mean that an insured, conscious of a possibility of a claim, may omit to report the accident upon the ground that in his opinion the claim is without merit either because the fault was not his or because the claimed injuries are unreal. Obviously an insured may not assume the role of judge and jury. But the insured does not lose the agreed policy protection if he omits to give notice because he reasonably and in good faith believes no claim against him is contemplated either because the damage is trivial or because there is no suggestion in the circumstances that he is causally involved. This accords with the reasonable expectation of the parties to the insurance arrangement. 51 N.J. at 89-90.
Since the court there agreed that notice had been timely given it had no need to examine the issue of whether it was necessary for the insurance carrier to demonstrate prejudice, or whether prejudice had in fact resulted. However, the court proceeded to examine that issue and said:
The insurance contract not being a truly consensual arrangement and being available only on a take-it-or-leave-it basis, and the subject being in essence a matter of forfeiture, we think it appropriate to hold that the carrier may not forfeit the bargained-for protection unless there are both a breach of the notice provision and a likelihood of appreciable prejudice. The burden of persuasion is the carrier's. 51 N.J. at 94.
*214 There is a difference between the notice provisions of the automobile policy in the Cooper case and the professional liability policy before us. In Cooper, the notice requirement was "as soon as practicable" (N.J.S.A. 17:28-2 speaks in terms of notice "given as soon as was reasonably possible"). On the other hand, although this policy requires notice "as soon as possible" it also clearly states that notice cannot be given after the policy period has expired.
There is in addition a basic difference in the automobile policy involved in the Cooper case and the "claims-made professional liability policy" here implicated. The notice requirement in an automobile policy is not a condition of coverage. It is simply a method of involving the insurance carrier in the investigation, settlement and defense of claims. N.J.S.A. 17:28-1.1 requires every automobile liability policy to provide coverage whenever an insured becomes liable for bodily injury or death sustained by any person arising out of the ownership, maintenance or use of a motor vehicle. By statute the insurance company's liability to defend and pay arises as soon as the accident occurs. N.J.S.A. 17:28-1; N.J.S.A. 17:28-1.1; Deblon, et al. v. Beaton, et al., 103 N.J. Super. 345, 351 (Law Div. 1968); In re Estate of Gardinier, 40 N.J. 261, 265 (1963); Dransfield v. Citizens Casualty Co., 5 N.J. 190 (1950). The statutes do not say precisely when notice has to be given, they only provide that the failure to give notice required by the policy will be excused if it could not have been given within the prescribed time and so long as notice was given as soon as was reasonaby possible. N.J.S.A. 17:28-2. It follows that the provision of notice is secondary to the attachment of liability and that the time within which notice may be given must be liberally construed.
On the other hand, coverage under a claims-made liability policy is for "all sums which the insured shall become legally obligated to pay as money damages because of any claim or claims first made against the insured and reported to the *215 company during the policy period arising out of any act or omission of the insured in rendering or failing to render professional services ... as a lawyer ..."
In exchange for limiting the time within which notice must be given, the insurance company has increased the risk it assumed by insuring for acts which the attorney may have committed before the policy was purchased.
The distinction between a discovery or "claims-made" and an occurrence policy is stated as follows:
... In a discovery policy the coverage is effective if the negligent or omitted act is discovered and brought to the attention of the insurance company during the period of the policy, no matter when the act occurred. In an occurrence policy the coverage is effective if the negligent or omitted act occurred during the period of the policy, whatever the date of discovery. [Samuel N. Zarpas, Inc. v. Morrow, 215 F. Supp. 887, 888 (D.N.J. 1963)].
See also Jones v. Continental Casualty Co., 123 N.J. Super. 353 (Ch. 1973); Rotwein v. General Accident Group, 103 N.J. Super. 406 (Law Div. 1968).
In the automobile policy there is no specific time stated for the giving of notice and there is no retroactive coverage for acts occurring before the policy takes effect. In the case before us there is a definite cut-off date for the giving of notice and there is retroactive coverage for acts occurring before the policy takes effect. We are not aware of any case that has applied the Cooper prejudice rationale to a claims-made professional liability policy. The cases of Jones v. Continental Casualty and Rotwein v. General Accident cited above were both decided after the decision in the Cooper case and neither one mentioned the need for a showing of prejudice.
We detect nothing unfair, unconscionable, ambiguous or contrary to public policy in a provision in a professional liability policy which provides full retroactive protection in exchange for reporting the claim during the policy period. A requirement that the insurance company must show prejudice under the circumstances of this case would be clearly contrary to the expectations of the parties. It would allow the insured to *216 benefit unfairly from his deliberate delay in giving notice of the claims to the insurance carrier. Plaintiff here assumed the role of judge and jury which Cooper specifically prohibits. 51 N.J. at 90. He assumed that the claims would not be worth much money and that he could buy his peace for a small price. He guessed wrong. He knowingly and voluntarily forfeited his insurance coverage. The element of "good faith" which provided the factual predicate for the Cooper holding, Cooper, 51 N.J. at 94, is conspicuously absent here.
Reversed and remanded for the entry of judgment for defendant National Union Fire Insurance Company.
BRODY, J.A.D., dissenting.
Cooper was an action on an automobile negligence liability policy. I dissent because the stated reasons for the holding in Cooper apply with equal force to a malpractice liability policy. The language in Cooper is clear and imperative:
[W]e ... hold that the carrier may not forfeit the bargained-for protection unless there are both a breach of the notice provision and a likelihood of appreciable prejudice. [Cooper v. Government Employees Ins. Co., 51 N.J. 86, 94 (1968)]
A little history is necessary to understand how this holding came about in a case where it was ultimately determined that there was no breach.
Whittle v. Associated Indemnity Corp., 130 N.J.L. 576 (E. & A. 1943), held that where, as here, a policy provides that notice is a condition precedent to recovery, the carrier is entitled to assert substantial non-performance of the condition as a defense to any proceeding against it on the policy, entirely without regard to whether it has been prejudiced by the default. In later opinions we noted the harshness of this rule and sought to soften it. In Miller v. Zurich Gen. Accident and Liability Ins. Co., 36 N.J. Super. 288 (App.Div. 1955), the policy required notice "as soon as practicable." We noted there that "[t]his phrase has been uniformly construed to mean, `within a reasonable *217 time.'"[1]Id. at 294. And in Mahon v. American Cas. Co. v. Reading, 65 N.J. Super. 148, 183 (App.Div. 1961), certif. den. 34 N.J. 472 (1961), we held that "in passing in the first instance upon the reasonableness of delayed notice by an insured, absence of prejudice [to the insurer] is a factor which may be taken into account." Thus in an effort to alleviate the harshness of Whittle, the Appellate Division developed the rule that while absence of prejudice cannot cure a breach of a condition of coverage, it may be considered as evidence that there was no breach.
In Cooper the notice was given very late, the carrier asserted appreciable prejudice and the Appellate Division determined that there was a breach because the insured did not give notice within a reasonable time. In concluding that there was no breach, the Supreme Court stated that the Appellate Division may have erroneously arrived at a contrary conclusion because of the carrier's assertions of prejudice despite the insured's good faith. It observed that considering prejudice, or its absence, as evidence of whether there is a breach can cut both ways, and therefore decided that the Appellate Division rule, adopted to get around Whittle, was unsound. Cooper, supra, 51 N.J. at 91, 93. The Supreme Court then did what the Appellate Division could not do. It overruled Whittle. Cooper held that even if late notice is a breach of a "condition precedent" to recovery, the insured may nevertheless recover unless the carrier can prove it has been appreciably prejudiced. Id. at 94. Defendant concedes that it has not been prejudiced in the present case.
*218 The Cooper rationale for requiring prejudice as well as a breach is three-fold: (1) the insured paid for coverage of the risk so he should not forfeit it when the carrier cannot demonstrate prejudice, (2) the insurance contract is not really a consensual arrangement because it is available only on a take-it-or-leave-it basis and (3) it would disserve the public interest to deny compensation to the victim (here, the client) of the insured's negligence where the carrier has suffered no prejudice by the breach. Id. at 94. Each of these factors is present here. The majority opinion does not mention any of them. Instead it has disinterred Whittle and applied its discredited rule to this case.
The majority point to four features which they argue distinguish the present case from Cooper: (1) here the requirement that notice be given within the policy period is a condition of coverage, (2) the Legislature has prescribed the form of coverage to be afforded in automobile liability policies but not in malpractice liability policies, (3) a "discovery" or "claims-made" policy should be strictly enforced because it covers the risk longer than an "occurrence" policy and (4) plaintiff acted in bad faith. In my view these distinctions are either illusory or immaterial.
The notice requirement in Cooper was also "a condition precedent" to an action on the policy. Cooper at 91. The Court, however, made it clear that policy language cannot convert a notice provision into a condition of coverage so as to avoid the carrier's need to prove prejudice:
And although the policy may speak of the notice provision in terms of "condition precedent," as Whittle observed, nonetheless what is involved is a forfeiture, for the carrier seeks, on account of a breach of that provision, to deny the insured the very thing he paid for. [Id. at 93-94.]
While it is true that the Legislature has long taken a special interest in the form of automobile liability policies, it did not mandate automobile liability coverage until five years after Cooper was decided. N.J.S.A. 39:6A-3. Cooper is firmly rooted in common-law, not statutory, considerations.
*219 A carrier issuing a discovery policy is not on the risk longer than a carrier issuing an occurrence policy. A typical occurrence policy requires the carrier to cover if the negligence occurs within the policy period even if, as in Cooper, there is no reason to believe a claim will be made until long after the policy expired. A discovery policy, such as the one here, requires the carrier to cover if during the policy period there develops a reason to believe a claim will be made even if the alleged malpractice occurred long before the period commenced. In both instances the time span between "occurrence" and "discovery" extends outside the policy period. There is no "increased risk" in a discovery policy when compared with an occurrence policy. It is just as likely that a discovery policy will cover malpractice occurring before the policy period but discovered during the period as that it will not cover malpractice occurring during the policy period but discovered after the period.
The "bad faith" of plaintiff is beside the point. The reference in Cooper to the good faith of the insured relates to the issue of breach. Here there is no issue of breach. The breach was blatant[2] and is conceded. Where there is no prejudice to the carrier, however, coverage is not lost because the insured deliberately broke the notice provision. The Pennsylvania Supreme Court followed Cooper and said:
In short, the function of a notice requirement is to protect the insurance company's interests from being prejudiced. Where the insurance company's interests have not been harmed by a late notice, even in the absence of extenuating circumstances to excuse the tardiness, the reason behind the notice condition in the policy is lacking, and it follows neither logic nor fairness to relieve the insurance company of its obligations under the policy in such a situation. [Brakeman v. Potomac Ins. Co., 472 Pa. 661, 371 A.2d 193 (Sup.Ct. 1977) (emphasis added)]
Cooper was also followed in Johnson Controls, Inc. v. Bowes, 381 Mass. 278, 409 N.E.2d 185 (Sup.Jud.Ct. 1980), a case *220 involving late notice under a legal malpractice liability policy. See also Reliance Ins. Co. v. St. Paul Ins. Cos., 307 Minn. 338, 239 N.W.2d 922 (Sup.Ct. 1976). In Northwestern Title Security Company v. Flack, 6 Cal. App.3d 134, 85 Cal. Rptr. 693 (Ct. App. 1970), notice was late yet a showing of prejudice was required in a suit on a professional errors and omissions policy. The court refused to draw a distinction between occurrence and discovery policies. Id. at 144, 85 Cal. Rptr. at 698. Jurisdictions that do not require the carrier to show prejudice where there has been a late notice under a malpractice policy apply that rule to all liability policies as we did before Cooper. See, e.g., Equity General Ins. Co. v. Patis, 119 Ill. App.2d 232, 74 Ill.Dec. 846, 456 N.E.2d 348 (App.Ct. 1983); Reserve Ins. Co. v. Richards, 577 S.W.2d 417 (Ky.Sup.Ct. 1978); and Falk v. Sul America Terrestres Maritimos, etc., 255 Or. 246, 465 P.2d 714 (Sup.Ct. 1970).
I would affirm.
NOTES
[1] We were advised at oral argument that that action has been tried and a judgment entered for plaintiff herein. However, the time for appeal from that judgment has not expired. Moreover, this action is not moot for plaintiff seeks a judgment for counsel fees.
[1] The policy in the present case also requires that notice be given "as soon as practicable." In determining whether there has been a breach, this provision overrides the "condition of coverage" that the claim be "reported to the Company during the policy period." There is no need for the majority to invoke "equitable considerations" to validate a notice given after the policy period where that notice is given within a reasonable time.
[2] Notice here was not given until almost two years after the relevant policy period that ended February 25, 1981.