201 N.J. Super. 492 (1985)
493 A.2d 584
ARIGATO STABLES, PLAINTIFF-APPELLANT,
v.
AMERICAN LIVE STOCK INSURANCE COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted May 6, 1985.
Decided May 24, 1985.
*493 Before Judges McELROY, DREIER and SHEBELL.
Tomar, Parks, Seliger, Simonoff & Adourian, for appellant (Steven Kudatsky, on the brief).
Archer & Greiner, for respondent (William J. Thompson, on the brief).
The opinion of the court was delivered by SHEBELL, J.A.D.
The issue before us is whether the trial court erred when it granted summary judgment to defendant insurance carrier on the grounds that the insured failed to notify the company of the infirm condition of the insured horse. Plaintiff maintains that the "appreciable prejudice" requirement established in Cooper v. Government Employees Insurance Company, 51 N.J. 86, 94 (1968) should have been applied to require that the carrier prove it was appreciably prejudiced by the untimely notice of claim. We disagree and affirm the granting of summary judgment.
Cooper dealt with the notice requirement of an automobile liability policy governed by N.J.S.A. 17:28-2 permitting notice to be "given as soon as was reasonably possible." 51 N.J. at 88 n. 1. In such circumstances the time within which notice may be given must be liberally construed as innocent third parties may be adversely affected. However, it was held in Zuckerman v. National Union Fire Insurance Company, 194 N.J. Super. 206, 213-15 (App.Div. 1984) that "[a] requirement *494 that the insurance company must show prejudice under the circumstances ... would be clearly contrary to the expectations of the parties" where the policy covered professional liability claims made during the policy period irrespective of when the cause of action arose.
Here the "thoroughbred mortality policy" clearly establishes that the insured must carry out its obligations as "a condition precedent to any liability," and provides that:
[a]ny failure by the Insured to do any of the foregoing shall render the Insured's claim null and void and release the Company from all liability in connection therewith, whether the Insured has personal knowledge of such events or such knowledge is confined to the representatives of the Insured or other persons who have care, custody or control of the animal.
We are satisfied that this policy, which may be renewed each year only upon presentation of a veterinary certificate accompanying the insured's renewal application, is a contract between the parties which is specially tailored to the peculiar circumstances of the thoroughbred breeding business and that the court should not rewrite the terms of the contract for the parties. We are not dealing with a contract that will affect the rights of third parties who have liability claims as in Cooper. It is clear that the conditions set forth in the policy serve a necessary and useful purpose with respect to the risk assumed by the insurer. This can be seen from the following relevant provision:
6. It is a condition precedent to any liability that (a) the Insured shall at all times provide proper care and attention for each animal hereby insured, and (b) in addition, in the event of any illness, disease, lameness, injury, accident or physical disability whatsoever of or to an insured animal the Insured shall immediately at his own expense employ a qualified Veterinary Surgeon and shall, if required by the Company, allow removal for treatment, and (c) in the event of the death of an insured animal the Insured shall immediately at his own expense arrange for a post mortem examination to be made by a qualified Veterinary Surgeon, and (d) in either event the Insured shall immediately give notice by telephone to the Company at its principal office, 200 South Fourth Street, Geneva, Illinois. The Company will instruct a Veterinary Surgeon on its behalf, if deemed necessary and any carcass shall not be disposed of until the Company shall give approval. This Policy does not cover death of an animal from unknown cause or causes, unless a post mortem report (filed as provided *495 in Condition 6c hereof) states a cause of death falling within the coverage of this Policy.
Underwriters at Lloyds, London v. Harkins, 427 S.W.2d 659 (Tex.Civ.App. 1968) illustrates the purposes of these clauses. There, as here, the policy language clearly and unambiguously required as a condition precedent to liability that notice of illness be given. The Court held:
Only through immediate notice can the insurer investigate the causes of illness or death that are certainly unique to livestock policies. Only through immediate notice can the insurer know, or have an opportunity to know, that the animal will receive proper attention and treatment. Only through immediate notice can the insurer protect itself from the unusual hazards that accompany the insuring of animal life, as contrasted to the insuring of human life. [427 S.W.2d at 664]
The Texas Court reached the same conclusion two years later in Circle 4 Stables, Inc. v. National Surety Corp., 451 S.W.2d 564, 567-68 (Tex.Civ.App. 1970). In that case the owner did not think the condition serious enough to trigger the notice provisions of the policy. The court stated that such notice provisions do not allow for any "judgment or speculation by the insured as to whether or not the injury or illness be serious or not nor whether the animal might or might not die and result in liability for the loss being placed upon the insuring company." 451 S.W.2d at 567. In accord with this position is Menard v. Citizens Ins. Co. of New Jersey, 184 So.2d 85 (La. Ct. App. 1966). There, the Louisiana Court of Appeals emphasized that the purpose of the notice provision is to afford to the insurer the opportunity to protect itself from unwarranted claims and that such provisions must be viewed in the context that it is socially acceptable to destroy an animal in the event of serious illness. Id. at 87; see generally Annotation, "Insured's Duties Respecting Care of Injured or Ill Animals Covered by Animal or Livestock Policy," 22 A.L.R. 4th 1053 (1983).
A contrary view was expressed by the majority in Wolfson v. Ins. Co. of Florida, 451 So.2d 1005 (Fla. Dist. Ct. App. 1984), pet. for rev. den. 458 So.2d 272 (Fla. 1984) which carried over the general provisions of Florida insurance law requiring that an insurer show prejudice before denying a claim based on noncompliance *496 with the notice provision. 451 So.2d at 1006-07. The dissent in Wolfson however pointed out that such a holding would undoubtedly have an adverse effect on insurance rates for Florida horsemen, stating:
Apart from the increased loss to insurance companies unable to mitigate damages, the threat that every insurance claim will be subject to litigation to determine the existence of prejudice will probably escalate rates for livestock mortality insurance in Florida. The burden of notifying the insurer, either by phone call or letter, is minimal. [451 So.2d at 1008 (Baskin, J., dissenting)]
We find the reasons for requiring notice as a condition precedent to liability to be self-explanatory in such policies. We are persuaded by the Texas holdings and the dissent in Wolfson that the detriment inherent in less than strict enforcement of the notice requirements far outweighs any benefit to be gained by adopting a rule requiring the insurer to demonstrate appreciable prejudice where the failure to report is not willful. We think it obvious that in matters such as this the race cannot be rerun and the insurer should not be placed in a position where its liability depends on some later judgment as to what effect notice and possible intervention might have had on the ultimate loss. Cf. Griggs v. Bertram, 88 N.J. 347, 362-63 & n. 3 (1982). The parties agreed that the insurance company would have the right to notice of any illness, disease, lameness, injury, accident or physical disability whatsoever, the right to remove the animal for treatment, and the right to instruct that any carcass not be disposed of without company approval. Plaintiff's horse was showing lameness for many months. It was ultimately destroyed despite the insurance carrier's refusal to consent to its destruction when first it learned of the condition from the veterinary certificate received when the policy was up for renewal. The motion judge's holding that the notice provisions of the policy were breached is uncontroverted and summary judgment was appropriate. R. 4:46-2; Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 73-75 (1954).
Affirmed.
*497 DREIER, J.A.D. (concurring).
I agree with the conclusions reached in this case. I am bothered, however, by the apparent exception injected into New Jersey insurance law by the statement made concerning the "prejudice" rule established in Cooper v. Government Employees Insurance Company, 51 N.J. 86, 94 (1968). The majority states:
Plaintiff maintains that the `appreciable prejudice' requirement established in Cooper ... should have been applied to require that the carrier prove it was appreciably prejudiced by the untimely notice of claim. We disagree and affirm the granting of summary judgment.
The "appreciable prejudice" rule should apply in this case as in any other insurance notice situation[1]. The "prejudice", however, under a livestock mortality policy with its immediate notice requirements, may occur when the insurer is deprived either of an opportunity to cure the sick animal or to document the bona fides of the claim. Thus, it may only be in the rare situation, where the good faith of the insured is not questioned and the death of the animal was inevitable, that the prejudice rule would come into play. Examples of such rare occurrences would be where otherwise healthy animals are killed as a result of a natural calamity, i.e., a racehorse with a broken leg ordered shot after an accident at a track, a farm animal mistakenly shot by a hunter or a similar situation where late notice would have no appreciable bearing upon the insurer's risk. Where, however, the insurer has any reasonable claim that its ability to investigate the animal's death has been impaired, the prejudice requirement would be fulfilled.
Here, the early evidence of foundering was destroyed by the treatment given to the horse without notice to the insurer and without its knowledge or participation. The possibility of a misrepresentation as to the animal's condition upon the owner's *498 agent's initial discovery of a problem justified the denial of coverage. I would not, however, except a single line of insurance policies from the "prejudice" rule; I would, as noted herein, indicate that its application follow more stringent guidelines.
NOTES
[1] See Wolfson v. Ins. Co. of Fla., 451 So.2d 1005, 1006-1007 (Fla.Dist.Ct. 1984), pet. for rev. den. 458 So.2d 272 (Fla. 1984). I am unmoved by the contrary authority cited from jurisdictions that have not otherwise espoused the "appreciable prejudice" rule.