230 N.J. Super. 169 (1989)
553 A.2d 49
DOROTHY MOLYNEAUX, PLAINTIFF-RESPONDENT,
v.
GEORGE MOLYNEAUX, DEFENDANT-RESPONDENT, AND MUTUAL FIRE, MARINE & INLAND INSURANCE COMPANY, PLAINTIFF-APPELLANT,
v.
GEORGE MOLYNEAUX AND DOROTHY MOLYNEAUX, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 26, 1988.
Decided February 2, 1989.
*172 Before Judges DEIGHAN, BAIME and D'ANNUNZIO.
Glenn A. Montgomery argued the cause for appellant (Robert C. Pollock, Jr., P.C., attorneys; Glen A. Montgomery on the brief).
Steven Mortenson argued the cause for respondents (Mortenson and Pomeroy, attorneys; Steven Mortenson on the brief).
The opinion of the court was delivered by DEIGHAN, J.A.D.
Mutual Fire, Marine and Inland Insurance Company (Mutual) appeals from three orders entered: (1) October 30, 1987 requiring it to defend and indemnify defendant George Molyneaux in an action instituted against him by Dorothy Molyneaux; (2) December 8, 1987 denying Mutual's motion for a new trial on a judgment entered in favor of Dorothy Molyneaux for personal injuries arising out of a boat accident, and (3) January 22, 1988 awarding $16,800.03 counsel fees and costs to George Molyneaux in defending the declaratory judgment brought by Mutual against him.
This matter arises out of a boating accident which occurred on September 9, 1984, in the East River near Manhattan Island in New York City. The boat, which was berthed in Beach Haven, New Jersey, was owned and operated by George Molyneaux. *173 On the date of the accident, George, his wife and two children and his mother, Dorothy Molyneaux, were boating in the New York Harbor and neighboring waterways. George was operating the boat at a high rate of speed when he failed to steer clear of a wake from a Circle Line Cruise Ship. When it hit the wake, the boat went up into the air, landed on its left side, but did not capsize. As a result, Dorothy sustained a broken leg. George then took Dorothy to a pier restaurant where an ambulance, operated by Emergency Medical Service, was summoned.
On August 12, 1985, Dorothy instituted an action against George for personal injuries arising out of the boat accident. Mutual had issued a boat and yacht insurance policy wherein it agreed to indemnify George for claims arising out of the operation of the boat. Mutual was first notified of the claim when suit papers were forwarded to it by the insurance agent. On December 6, 1985, Dorothy amended the complaint to include the boat manufacturer, Cobalt Boats, as an additional defendant.
On December 16, 1985, Mutual filed a declaratory judgment action joining both George and Dorothy Molyneaux and seeking a determination that it was not liable to defend or pay any claims against George under the policy. Mutual contended, and George conceded, that notice of the claim was filed late in violation of the terms and conditions of the liability policy. However, George contended that there was no appreciable prejudice to Mutual. In her answer, Dorothy counter-claimed against Mutual, asserting that she was "an intended and/or contemplated third-party beneficiary of said contract of insurance." In its answer to the counter-claim, Mutual asserted separate defenses of laches, equitable estoppel and waiver. The two actions were subsequently consolidated.
In the declaratory judgment action, Mutual contended that George's late notice was not made in good faith and that as a result, it was appreciably prejudiced and therefore not obligated to defend or indemnify George. The trial judge denied Mutual's *174 motion for summary judgment and determined that since George conceded that the notice of the claim was filed late, the only remaining issue was that of appreciable prejudice to Mutual. The trial court precluded Mutual from presenting evidence on the issue of fraud and collusion to prove appreciable prejudice in the declaratory judgment action.
At the hearing on the declaratory judgment action, Walter Kolody and John Higgins, who were hired by Mutual to investigate the claim, testified to the extent of their investigation. The investigation by Kolody, who had been hired by Higgins, was less than thorough. No reports were obtained from the hospitals where Dorothy was treated, no police report was obtained and no inspection was made of the boat. In addition, the investigators never obtained a copy of the Emergency Medical Service report made by the ambulance personnel.
Michael Rice, an insurance agent and friend of George's who sold him the insurance policy, also testified. George had ultimately filed his late notice with Rice. Both George and his mother, Dorothy, testified on their own behalf. The only other proofs consisted of the depositions of George which were read into the record.
As noted earlier, following the hearing, the trial judge determined that Mutual was obligated to defend and indemnify George in the action instituted against him by Dorothy. Mutual's subsequent motion for a new trial was denied.
Subsequently, George and Dorothy applied for the attorney's fees which they had incurred in defending the declaratory judgment action. Judge Barisonek denied Dorothy's application for counsel fees but awarded fees in part to George in the amount of $8,556.68. Thereafter, George applied for a reconsideration of the order granting counsel fees. Judge Barisonek granted a motion for reconsideration and awarded counsel fees for a combined total of $16,800.03. The basis for this increase was that "through inadvertence of counsel and the court an error was made in calculating the total amount of fees payable to defendant, George Molyneaux."
*175 In December 1987, the action by Dorothy against George was tried. The result was a $75,000 verdict in her favor of which 40% was assessed against George and 60% against Cobalt Boats, the boat manufacturer.
On this appeal, Mutual raises three issues. Mutual argues that the trial court erred (1) in requiring Mutual to prove "appreciable prejudice," (2) in applying New Jersey instead of New York law on the issue of compliance with the notice provision as a condition precedent in the insurance policy, and (3) in awarding counsel fees to George Molyneaux.
We affirm.

I
Mutual argues that because of the unique factual circumstances of this case, the trial judge should not have applied the appreciable prejudice standard stated in Cooper v. Government Employees Ins. Co., 51 N.J. 86 (1968) and that this standard should not apply to cases involving marine liability insurance.
In Cooper, the Supreme Court established a two-part test to determine forfeiture of coverage when an insured has failed to give timely notice to the insurance carrier:
The insurance contract not being a truly consensual arrangement and being available only on a take-it-or-leave-it basis, and the subject being in essence a matter of forfeiture, we think it appropriate to hold that the carrier may not forfeit the bargained-for protection unless there [is] both a breach of the notice provision and a likelihood of appreciable prejudice. The burden of persuasion is the carrier's. [51 N.J. at 94 (footnotes omitted).]
Since George conceded that he gave late notice, there is no dispute concerning the breach of the notice provisions of the policy. Accordingly, the hearing focused solely upon the issue of appreciable prejudice, which Mutual claims should not have been applied in this case.
Mutual relies upon two recent decisions to support its contention regarding the issue of appreciable prejudice: Zuckerman v. National Union Fire Ins. Co., 194 N.J. Super. 206 (App.Div. 1984) aff'd 100 N.J. 304 (1985), and Stables v. American Live *176 Stock Ins. Co., 201 N.J. Super. 492 (App.Div. 1985). However, a review of these cases clearly shows that Mutual's reliance upon them is misplaced.
In Zuckerman, the Supreme Court delineated a comprehensive analysis of the distinction between a "claims made" or "discovery" policy and an "occurrence" policy. As stated by the Court,
"In a discovery policy the coverage is effective if the negligent or omitted act is discovered and brought to the attention of the insurance company during the period of the policy, no matter when the act occurred. In an occurrence policy the coverage is effective if the negligent or omitted act occurred during the period of the policy, whatever the date of discovery." [100 N.J. at 310, quoting Samuel N. Zarpas, Inc. v. Morrow, 215 F. Supp. 887, 888 (D.N.J. 1963)]
The Court further noted that "[b]asically, the `claims made' policy would provide unlimited retroactive coverage and no prospective coverage at all, while the `occurrence' policy would provide unlimited prospective coverage and no retroactive coverage at all." 100 N.J. at 310, quoting Brander v. Nabors, 443 F. Supp. 764, 767 (N.D.Miss. 1978), aff'd, 579 F.2d 888 (5th Cir.1978). In other words, in an "occurrence" policy, the peril insured is the occurrence itself, so that once the occurrence takes place, coverage attaches even though the claim is not made for sometime thereafter. In a "claims made" policy it is the making of the claim which is the event and peril insured, regardless of when the occurrence took place. 100 N.J. at 310-311.
The event that invokes coverage under a "claims made" policy is the transmittal of notice of the claim to the insurance carrier. Id. at 324. The essence of a "claims made" policy is that notice must be given during the policy period for "retroactive coverage for errors and omissions that took place prior to the policy." Id. (Emphasis supplied.) Notice of the claim to the insurer triggers coverage for a claim on a negligent or mistaken act even if the act took place many years prior to the coverage dates.
By way of contrast, an occurrence policy provides coverage for any liability which is incurred within the coverage dates *177 of the policy. However, claims for negligent or mistaken acts which occurred prior to the effective date of the policy are not covered. As the Zuckerman Court noted,
The automobile liability policy in Cooper was a classic occurrence policy that provided the insured with coverage in the event of her negligence. The notice requirement in [an occurrence] policy [does] not define the coverage provided by the policy but rather [is] included to aid the insurance carrier in investigating, settling, and defending claims.... Accordingly, the requirement of notice in an occurrence policy is subsidiary to the event that invokes coverage, and the conditions related to giving notice should be liberally and practically construed. [Id. at 323-324]
Here, Mutual's policy is unquestionably an occurrence policy, comparable to an occurrence automobile liability insurance policy. As such, "the Cooper doctrine has a clear application." Id. at 324.
Mutual also relies on Stables v. American Live Stock Ins. Co., 201 N.J. Super. 492, in support of its contention. In that case, which involved a policyholder's failure to notify the carrier of an infirm condition of the insured horse, the Court created an extremely narrow exception to the Cooper test. In noting the uniqueness of the case, Judge Shebell stated that
this policy, which may be renewed each year only upon presentation of a veterinary certificate accompanying the insured's renewal application, is a contract between the parties which is specially tailored to the peculiar circumstances of the thoroughbred breeding business and ... the court should not rewrite the terms of the contract for the parties. We are not dealing with a contract that will affect the rights of third parties who have liability claims as in Cooper. [201 N.J. Super. at 494 (emphasis supplied).]
In reaching its decision that the insurer was not required to prove that it was appreciably prejudiced by the late notice, the Court noted that,
Only through immediate notice can the insurer investigate the causes of illness or death that are certainly unique to livestock policies. Only through immediate notice can the insurer know, or have an opportunity to know, that the animal will receive proper attention and treatment. Only through immediate notice can the insurer protect itself from the unusual hazards that accompany the insuring of animal life. [Id. at 495, quoting Underwriters at Lloyds, London v. Harkins, 427 S.W.2d 659, 664 (Tex.Civ.App. 1968).]
The present case does not involve such circumstances or considerations, and thus Mutual's attempted analogy to Stables is entirely unfounded.
*178 Finally, in its discussion of the Law Division opinion in Peskin v. Liberty Mutual Ins. Co., 214 N.J. Super. 686 (Law Div. 1986) aff'd in part and remanded, 219 N.J. Super. 479 (App. Div. 1987), Mutual ignores the fact that the Appellate Division opinion reaffirmed the need to apply the appreciable prejudice test from Cooper in cases involving late notice to a carrier. 219 N.J. Super. at 481.
Furthermore, although the Law Division did discuss the sophistication of the parties in Peskin, 214 N.J. Super. at 695-696, Mutual's citation to this case is no substitute for the inadequate proof in the present case to show that Mutual suffered appreciable prejudice. Here, the sophistication of the defendants may have been shown, but it was not linked to any evidence that Mutual suffered appreciable prejudice.
In the ruling against Mutual, Judge Barisonek focused on the inadequacy of the investigation conducted by Mutual and found that "the emphasis [of the investigation] was to secure information to demonstrate appreciable prejudice as opposed to securing facts which would enable the carrier to defend the claim." He found "that there was only peripheral investigation as to the happening of the accident with the majority of the investigation going to demonstrate or attempting to demonstrate appreciable prejudice." The judge also noted that the manufacturer of the boat, which was brought into the case late, also received late notice of the claim. This mitigates against Mutual's claim of prejudice.
Despite the fact that Judge Barisonek effectively ruled out any references or proofs as to fraud and collusion, Mutual resurrects this issue, without a point heading, under the argument concerning appreciable prejudice. It contends that "[i]n an intra-family tort setting (unlike a true adversarial setting wherein the plaintiff and defendant are disinterested strangers), the defendant insured and the injured plaintiff are adverse in form only and arguably mutually interested in achieving one *179 desired result; namely, finding coverage which will ultimately flow to the benefit of the injured family member.... [I]t is submitted that immediate notice, in intra-family tort settings, is equitably and legally warranted." (Emphasis supplied.) It then submits that "Mutual Fire maintains that the facts give rise not only to a legitimate inference of collusion, but a conclusive inference of same which, in turn, emasculated Mutual Fire's potential to develop the defenses of George Molyneaux in a timely and effective manner."
At trial, Mutual's principal witness, Walter Kolody, an independent claims investigator, supplied no proofs upon which to indicate prejudice. He testified that portions of George's statements were "unbelievable;" that he was suspicious that no medical payment claims or property damage claim were made; that he hoped to find independent witnesses who would prove that the insured was lying, and that he really believed that the insured, George, committed a "non-provable" fraud.
In support of Mutual's contention that it was prejudiced and could thus decline coverage, Kolody testified that: (1) George Molyneaux may not have been operating the boat; (2) portions of Molyneaux's statement were unbelievable; (3) there was no police report; (4) he was suspicious because there was no collision damage or claim; (5) Molyneaux did not remember the name of the restaurant where he docked before removing his mother from the boat; (6) George could not recall whether his son had received additional medical treatment after being seen initially in the emergency room; (7) potential witnesses were lost, and (8) Molyneaux's "incredible" version of the accident precluded a product liability action against the manufacturer of the boat. Based on these "facts" Kolody concluded that Mutual was prejudiced and that there was no way to overcome the prejudice.
Items (1), (2) and (4) are merely conjecture and suspicions which may not form the basis to establish appreciable prejudice. Circumstances that are merely suspicious will not support an inference of fraud or appreciable prejudice. Pearl Assur. Co., *180 Ltd. v. Watts, 69 N.J. Super. 198, 206 (App.Div. 1961). Insofar as item (8) is concerned, Cobalt Boats, the manufacturer of the boat, was brought in as a defendant and held liable. Insofar as the police report is concerned, Higgins, Kolody's investigator, checked only one precinct, out of 100's in New York City, because it was closest to the Holland Tunnel and he was on his way home. He was told that a search for an old police report could be made but it required an authorized signature. Kolody was so informed but he never got an authorized signature.
As to item (5), the restaurant was across the street from Bellevue Hospital where Dorothy Molyneaux had been taken. Kolody and Higgins both knew this, but never made any effort to check this out. Item (6) is totally irrelevant and as to item (7), concerning Circle Lines' witnesses, Higgins did contact Circle Lines and was informed that passenger lists are never kept. Thus, the passengers could not have been identified even if he had requested the information the day after the accident.
We are satisfied from our review of the record that Mutual failed to sustain its burden of proof that it was appreciably prejudiced by late notice of the claim. The fact that an insured's sympathy is with an injured member of the insured's family does not of itself furnish evidence that the filing of a late notice causes appreciable prejudice to the insurer. Cf. Pearl Assur. Co. Ltd., 69 N.J. Super. at 207.

II
Under New York law, the insurer is not required to show appreciable prejudice in cases involving late notice of loss to a carrier. Mutual contends that the trial court committed reversible error in not applying New York law in interpreting the insurance policy in question. There is no merit to this contention.
In State Farm, etc., Ins. Co. v. Simmons' Estate, the Supreme Court adopted the "most significant relationship test" as it is set forth in Restatement (Second), Conflict of Laws, §§ 6, 188 (1971). 84 N.J. 28, 34-37 (1980). Under this test,

*181 the law of the place of the contract ordinarily governs the choice of law because this rule will generally comport with the reasonable expectations of the parties concerning the principal situs of the insured risk during the term of the policy and will furnish needed certainty and consistency in the selection of the applicable law. [84 N.J. at 37 (citations omitted).]
In this matter, both the place of contracting and negotiation of the policy was New Jersey. George acquired the policy through Michael Rice, his local insurance agent. The insured boat was purchased, stored, docked and licensed in New Jersey. All payments to the policy were made in New Jersey. In our view the trial court did not err in applying the law of New Jersey on the issue of compliance with the notice provision the insurance policy.

III
Lastly, Mutual contends that based on the facts and circumstances in this matter, "the awarding of counsel fees to George Molyneaux sanctioned the conduct of George Molyneaux in his irresponsible failure to notify the insurance carrier for a one-year period after the date of the incident which clearly impaired the carrier's ability to have a reasonable opportunity to garner and gather defenses to the claim being advanced by the insured's own mother, Dorothy Molyneaux."
R. 4:42-9(a)(6) provides that a fee for services shall be allowed,
In an action upon a liability or indemnity policy of insurance, in favor of a successful claimant.
This rule was promulgated both to discourage groundless disclaimers and to more equitably provide to an insured the benefits of the insurance contract without the necessity of obtaining a judicial determination that the insured is in fact entitled to such protection. Enright v. Lubow, 215 N.J. Super. 306, 311 (App.Div. 1987), certif. den. 108 N.J. 193 (1987); Kistler v. N.J. Mfts. Ins. Co., 172 N.J. Super. 324, 328-330 (App.Div. 1980). The trial judge is vested with broad discretion as to when, where and under what circumstances fees may be awarded. Enright, 215 N.J. at 313.
*182 In addition to expenses incurred to defend a third party action, attorney's fees incurred by an insured in a declaratory judgment action to determine the existence of coverage have also been awarded under R. 4:42-9(a)(6). See Avemco Ins. Co. v. United States Ins. Co., 212 N.J. Super. 38 (App.Div. 1986); Tooker v. Hartford Accident & Indemnity Co., 136 N.J. Super. 572 (App.Div. 1975), certif. den. 70 N.J. 137 (1976); Lansco, Inc. v. Dept. of Environmental Protection, 138 N.J. Super. 275 (Ch.Div. 1975), aff'd 145 N.J. Super. 433 (App.Div. 1976), certif. den. 73 N.J. 57 (1977); New Jersey Manufacturers Ins. Co. v. Consolidated, 124 N.J. Super. 598 (Law Div. 1973).
Although Mutual relies on Felicetta v. Commercial Union Ins. Co. et al, 117 N.J. Super. 524 (App.Div. 1971), certif. den. 60 N.J. 141 (1971), in support of its argument, this reliance is misplaced. In Felicetta the insureds were unsuccessful in their suit against their carrier on the question of automobile liability coverage. Cf. Enright v. Lubow, 215 N.J. Super. at 311. (Under R. 4:42-9(a)(6), unsuccessful insureds not entitled to counsel fees.)
We are satisfied that the trial judge did not abuse his discretion in awarding counsel fees to George Molyneaux.
AFFIRMED.